UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| TERRY WAYNE KELLY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:15-cv-1004-JDT-egb |
| ) | |
| TRENTON CITY POLICE ) | |
| DEPARTMENT, et al., ) | |
| ) | |
| Defendants. ) | |

ORDER TO MODIFY THE DOCKET,
GRANTING MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS* (ECF No. 19),
ORDER DISMISSING COMPLAINT,
DENYING MOTION FOR APPOINTMENT OF COUNSEL (ECF Nos. 3 & 15),
GRANTING MOTION FOR A JURY TRIAL (ECF No. 11),
DENYING MOTION FOR A PSYCHOLOGICAL EVALUATION (ECF No. 4),
ADDRESSING PENDING MOTIONS (ECF Nos. 9, 12, & 16),
AND GRANTING LEAVE TO AMEND

On January 6, 2015, Plaintiff, Terry Wayne Kelly ("Kelly"), who was, at the time, an inmate at the Gibson County Correctional Complex in Trenton, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, accompanied by a motion seeking leave to proceed *in forma pauperis*. (Compl., ECF No. 1; Appl. to Proceed, ECF No. 2.) In response to the Court's order (Order, ECF No. 6), Kelly filed a properly completed *in forma pauperis* affidavit and inmate trust fund account statement on January 16, 2015 (Appl. to Proceed in District Court Without Prepaying Fees or Costs (Short Form), ECF No. 8). The Court issued an order on January 20, 2015, granting leave to proceed *in forma pauperis* and assessing the civil filing fee pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. §§ 1915(a)-(b). (Order, ECF No. 10.) On February 18, 2015, Kelly notified the Clerk that he had been released

and provided his new address. (Letter, ECF No. 17.) In an order issued on April 13, 2015, the Court directed Kelly to file a non-prisoner *in forma pauperis* affidavit or pay the $400 civil filing fee. (Order, ECF No. 18.) On May 6, 2015, Kelly filed a motion seeking leave to proceed *in forma pauperis*. (Appl. to Proceed in District Court Without Prepaying Fees or Costs (Long Form), ECF No. 19.) For good cause shown, leave to proceed *in forma pauperis* is GRANTED. The Clerk shall record the defendants as the City of Trenton, Tennessee and Gibson County.[1]

I. THE COMPLAINT & AMENDED COMPLAINT

On January 16, 2015, Kelly filed a motion seeking leave to amend with an incorporated amendment to his complaint. (Mot. to Revise & Am. Compl., ECF No. 7.) Because the motion was submitted before the complaint had been screened, leave of Court is not required. The amended complaint includes a jury demand. On January 21, 2015, Kelly filed a motion for a jury trial. (Mot. for Jury Trial, ECF No. 11.) For good cause shown, the motion is GRANTED. The Clerk is directed to modify the docket to reflect that Kelly has demanded a jury trial.[2]

The complaint alleges that Kelly was arrested on January 24, 2014 after being involved in a fight with three other persons. Kelly was apparently barefoot during the fight, and he stepped on broken glass and other debris. As a result, glass shards were deeply embedded in both of Kelly's feet. (Compl. at 1-2, ECF No. 1.) When the police arrived, Kelly was arrested on

---

[1]The Court has construed the allegations against the Trenton City Police Department ("TCPD") and the Gibson County Correctional Complex ("GCCC") as an attempt to sue the City of Trenton and Gibson County, respectively.

[2]The fact that Plaintiff has demanded a jury trial does not guarantee that he will get one. A case can be dismissed on screening under 28 U.S.C. §§ 1915(e)(2)(B) or 1915A(b) or a defendant may file a motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure or a motion for summary judgment under Rule 56. A jury demand means only that, if the case proceeds to trial, the trier of fact will be a jury rather than the assigned judge.

charges of public drunkenness and disorderly conduct. (*Id.* at 2.) The other individuals involved in the fight were not arrested. (*Id.*) While Kelly was being transported to the TCPD for booking, he told the arresting officer that there were "unknown objects" that had taken up residence in his feet. (*Id.*)

At the TCPD, Kelly made his medical condition known to "all," and everyone present must have seen "'much' blood that covered the floors in all the areas that [Kelly had] walked upon." (*Id.* at 3.) There was also blood on the floor of the holding cell where Kelly was kept "for an identified amount of hours." (*Id.*) Kelly claims that officers routinely checked on him and asked why his feet were bleeding. Kelly replied "that something was there within," but nobody rendered emergency medical assistance. (*Id.*) Later, Kelly was taken to the GCCC. (*Id.*)

On his third day at the GCCC Kelly was removed from the booking room isolation cells and assigned to a housing pod. During his time in isolation, Kelly had removed "a lot of smaller pieces along with . . . two larger pieces" of glass from his feet. (*Id.* at 4.) At the time he was moved, Kelly was still bleeding and was walking with "forced and careful steps." (*Id.* at 4-5.) Despite his limited mobility, Kelly was housed on the second floor. Kelly was required to walk up the stairs to get to his housing unit. After two days, as Kelly was walking down the stairs to the shower, he felt pain in his right foot from a piece of glass, flinched, lost his balance and fell down the stairs, striking his head on the concrete floor. (*Id.* at 5.) Kelly's right foot and knee

were twisted. (*Id.* at 5-7.)³ After this incident, Kelly has "vividly suffer[ed] from physical and mental bouts in aspects unassociated with the norm . . . ." (*Id.* at 8.)

At the time of his arrest, Kelly had other injuries that required treatment, including facial burns, a partially swollen face, a partially closed eye, burst lips, a large open cut on his nose, and burns on his right shoulder, upper arm and right chest area. Most of these ailments were visible to the TCPD officers who arrested Kelly. The GCCC staff also should have noticed Kelly's injuries. Kelly contends that he should have been hospitalized. (*Id.* at 7-8.)⁴

Kelly seeks unspecified relief. (Compl., ECF No. 1-1 at 3.)⁵

In his amendment, which was filed on January 16, 2015, Kelly lists the individuals who were involved in the incidents at issue. (Am. Compl., ECF No. 7-1 at 2-3.) The amendment does not seek to name any of these individuals as parties, and Kelly emphasizes that he is "not saying that any one of the individuals named . . . had any transactions or played out a part in Kelly's tragedy, but, they . . . know of such." (*Id.* at 2.)

---

³Later, the complaint mentions the "tragedy" of January 29, 2014, which appears to refer to Kelly's fall. (*See id.* at 8.)

⁴This allegation is confusing. The complaint alleges that Kelly had these injuries on March 13, 2014 (*id.* at 7), but it also alleges that he was arrested after a fight on January 24, 2014 (*id.* at 1). The complaint makes clear that Kelly did not sustain these additional injuries in the Jail. It is possible that Kelly was released on bail after January 24, 2014 and subsequently rearrested, but the complaint does not say so.

⁵This aspect of the complaint is confusing because Kelly claims both that he was denied all medications and that he was denied pain medication that was prescribed at the hospital. (*Id.*) The narrative portion of the complaint does not mention that Kelly was taken to the hospital.

The complaint was accompanied by a 10-page letter seeking legal advice. (Letter, ECF No. 1-3.) The Court and its employees are unable to provide legal advice. *See* Local Rules 77.2(a), 83.6.

In another portion of his amendment, Kelly states that he "has routinely visit[ed] hospital facilities for a traumatic injurious nature in bodily structure that was generated from his fall thereupon January 29, 2014 to obtain medical knowledge . . . ." (Am. Compl., ECF No. 7-2 at 2.) Kelly clarified that his hospital visits "started after release from incarceration (February 28, 2014) within the month of March, 2014 and continued throughout such year until the month of November 2014." (*Id.* at 4.) For reasons that are unclear, Kelly claims that he has refused to be seen at the GCCC clinic. (*Id.* at 3.) Kelly states because of an "unjust act," he has endured pain and suffering manifested in disfigurement and deformity. (Am. Compl., ECF No. 7-3 at 1.)

II. ANALYSIS

A.  Screening and Standard

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

  (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

  (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal

conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. As the Sixth Circuit has explained:

> Before the recent onslaught of *pro se* prisoner suits, the Supreme Court suggested that *pro se* complaints are to be held to a less stringent standard than formal pleadings drafted by lawyers. *See Haines v. Kerner*, 404 U.S. 519 (1972) (per curiam). Neither that Court nor other courts, however, have been willing to abrogate basic pleading essentials in *pro se* suits. *See, e.g., id.* at 521 (holding petitioner to standards of *Conley v. Gibson*); *Merritt v. Faulkner*, 697 F.2d 761 (7th Cir.) (duty to be less stringent with *pro se* complaint does not require court to conjure up unplead allegations), *cert. denied*, 464 U.S. 986

> (1983); *McDonald v. Hall*, 610 F.2d 16 (1st Cir.1979) (same); *Jarrell v. Tisch*, 656 F. Supp. 237 (D.D.C. 1987) (pro se plaintiffs should plead with requisite specificity so as to give defendants notice); *Holsey v. Collins*, 90 F.R.D. 122 (D. Md. 1981) (even *pro se* litigants must meet some minimum standards).

*Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

B.  § 1983 Claim

Kelly filed his handwritten complaint on the court-supplied form for actions under 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that

7

in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

1. *Claim against City of Trenton and Gibson County*

Kelly sues the City of Trenton and Gibson County. When a § 1983 claim is made against a municipality, the court must analyze two distinct issues: (1) whether plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). The second issue is dispositive of plaintiff's claim against the City of Trenton and Gibson County.

A local government "cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 691 (1978) (emphasis in original); *see also Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691-92; *Deaton v. Montgomery Co., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir.

8

2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "Where a government 'custom has not received formal approval through the body's official decisionmaking channels,' such a custom may still be the subject of a § 1983 suit." *Alkire*, 330 F.3d at 815 (quoting *Monell*, 436 U.S. at 690-91). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk Co. v. Dodson*, 454 U.S. at 326 (citation omitted)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is *actually responsible*.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in original).

Although civil rights plaintiffs are not required to plead the facts demonstrating municipal liability with particularity, *Leatherman v. Tarrant Cnty Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168-69 (1993), the complaint must be sufficient to put the municipality on notice of the plaintiff's theory of liability, *see, e.g*., *Fowler v. Campbell*, No. 3:06CV-P610-H, 2007 WL 1035007, at *2 (W.D. Ky. Mar. 30, 2007); *Yeackering v. Ankrom*, No. 4:05-CV-00018-M, 2005 WL 1877964, at *2 (W.D. Ky. Aug. 5, 2005); *Oliver v. City of Memphis*, No. 04-2074-B, 2004 WL 3316242, at *4 (W.D. Tenn. Dec. 2, 2004); cf. *Raub v. Correctional Med. Servs., Inc*., No. 06-13942, 2008 WL 160611, at *2 (E.D. Mich. Jan. 15, 2008) (denying motion to dismiss where complaint contained conclusory allegations of a custom or practice); *Cleary v. Cnty of Macomb*, No. 06-15505, 2007 WL 2669102, at *20 (E.D. Mich. Sept. 6, 2007) (same); *Morningstar v. City of Detroit*, No. 06-11073, 2007 WL 2669156, at *8 (E.D. Mich. Sept. 6, 2007) (same); *Chidester v. City of Memphis*, No. 02-2556 MA/A, 2006 WL

9

1421099, at *3 (W.D. Tenn. June 15, 2005). The allegations of the complaint fail to identify a purported official policy or custom the City of Trenton or Gibson County which caused injury to Kelly.

C.  Motion to Appoint Counsel (ECF Nos. 3 & 15.)

On January 6, 2015, Kelly filed a motion for appointment of counsel. (ECF No. 3.) On February 4, 2015, Kelly filed another motion seeking appointment of counsel. (Mot. for Civil Pro Bono Panel for Pro Se "Indigent Parties," ECF No. 15.) Pursuant to 28 U.S.C. § 1915(d), the "court may request an attorney to represent any such person unable to employ counsel." However, "[t]here is no constitutional or . . . statutory right to counsel in federal civil cases." *Farmer v. Haas*, 990 F.2d 319, 323 (7th Cir. 1993), and "§ 1915(d) does not authorize the federal courts to make coercive appointments of counsel" to represent indigent civil litigants, *Mallard v. United States Dist. Court*, 490 U.S. 296, 310 (1989). Generally, a court will only appoint counsel in exceptional circumstances. *Willett v. Wells*, 469 F. Supp. 748, 751 (E.D. Tenn. 1977). Although "no comprehensive definition of exceptional circumstances is practical," *Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982), courts resolve this issue through a fact-specific inquiry. *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986). Examining the pleadings and documents in the file, the Court analyzes the merits of the claims, the complexity of the case, the pro se litigant's prior efforts to retain counsel, and his ability to present the claims. *Henry v. City of Detroit Manpower Dep't*, 763 F.2d 757, 760 (6th Cir. 1985); *Wiggins v. Sargent*, 753 F.2d 663, 668 (8th Cir. 1985).

As a general rule, counsel should be appointed in civil cases only if a litigant has made "a threshold showing of some likelihood of merit." *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 174

(2d Cir. 1989). Because Kelly has yet to meet the threshold for appointment of counsel, the motions are DENIED.

E.  Motion for Psychological Evaluation (ECF No. 4.)

Kelly's complaint was accompanied by a motion for a psychological evaluation. (Mot. for Psychological Evaluation, ECF No. 4.) The purpose of the psychological evaluation was to document Kelly's need for appointed counsel. Because Plaintiff has represented that he receives Supplemental Security Income ("SSI") benefits due to a disability, the motion for a psychological evaluation is DENIED as unnecessary.

D.  Pending Motions (ECF Nos. 9, 12, and 16.)

On January 16, 2015, Kelly filed a motion for an order directing the State of Tennessee, which is not a party to this action, to provide his medical records. (Mot. to Procure Pl.'s Hospitals(s) Medical Records, ECF No. 9.) It appears that Kelly seeks the issuance of a third-party subpoena to the facilities that treated him in 2014. Under Rule 45(a)(3) of the Federal Rules of Civil Procedure, "[t]he clerk must issue a subpoena, signed but otherwise in blank, to a party who requests it." A motion is not required to obtain a third-party subpoena. Kelly's motion is for an order directing the State of Tennessee to provide his medical records is DENIED because those records are properly obtained through a third-party subpoena.

On January 21, 2015, Kelly filed a motion, entitled "Motion Proceeding As Pretrial Argument And Conference," which, despite the title, is not a motion but, rather, presents additional argument about his claims for relief. (Pretrial Argument, ECF No. 12.) The Clerk is directed to modify the docket to reflect that this document is not a motion.

On February 4, 2015, Kelly filed a motion seeking the issuance of summonses and service of process on Defendants. (Summons and Service of Process Mot., ECF No. 16.) Where

a civil case is filed by an indigent prisoner, summonses are not issued and the defendants are not served until after the case has been screened under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b). See Local Rule 4.1(b)(3). Plaintiff's motion is DENIED as premature. This order constitutes the required screening.

## III. LEAVE TO AMEND

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, No. 12-1403, 2013 WL 646489, at *1 (1st Cir. Feb. 22, 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Brown*, 2013 WL 646489, at *1; *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) ("*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile"); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts.").

## IV. CONCLUSION

The Court DISMISSES the complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). However, the court cannot

conclude that any amendment to Kelly's claims would be futile as a matter of law. Therefore, Kelly is GRANTED leave to amend his complaint as to the claims for medical indifference. Any amendment must be filed within thirty (30) days of the date of entry of this order. Kelly is advised that an amended complaint supersedes the original complaint and must be complete in itself without reference to the prior pleadings. The text of the complaint must allege sufficient facts to support each claim without reference to any extraneous document. Any exhibits must be identified by number in the text of the amended complaint and must be attached to the complaint. All claims alleged in an amended complaint must arise from the facts alleged in the original complaint or the first amended complaint. Kelly may add additional defendants provided that the claims against the new parties arise from the acts and omissions set forth in the original or first amended complaints. Each claim for relief must be stated in a separate count and must identify each defendant sued in that count. If Kelly fails to file an amended complaint within the time specified, the Court will assess a strike pursuant to 28 U.S.C. § 1915(g) and enter judgment.

Kelly shall promptly notify the Clerk of any change of address or extended absence. Failure to comply with these requirements, or any other order of the Court, may result in the dismissal of this case without further notice.

IT IS SO ORDERED.

                                                                **s/James D. Todd**_____
                                                                JAMES D. TODD
                                                                 UNITED STATES DISTRICT JUDGE